Judge Mills,
delivered the of the Court.
The Auditor of public accounts, at the August term, 1826, of the general court, filed his notice in writing, that he would, on the fourth day of the term move against tlie appellees, one being the clerk of Fayette county, and the rest his sureties, for the revenue collected by the clerk on deeds} seals &c. and not accounted for to the treasury.
On the third day of the term, the Attorney General, made the motion, and obtained the,judgment, the appellees making default.
Motion for re-hearing’ granted, cause reheard, credit allowed, and judgment for balance.
Motion having been made on the day'before the notice, the re-hearing approved
Discretion of the court in granting rehearings.
On a subsequent day of the term, the clerk appeared, filed his affidavit, stating the reasons of his default, and the nature of his defence, and showing tihat the defence on which he relied, was prepared Jmd in Frankfort, the day on which the judgment ¡Hvas obtained, hut was not then offered, the judgement being rendered before it arrived, and he prayed that the judgment might be set aside and his defence immediately heard,
His motion was granted, and his defence heard, and he received on that hearing a credit for fifteen hundred dollars, and judgment was rendered against him for a small balance. The Attorney General excepted to the opinion of the court and appealed-
If the defence of the clerk was a valid one, we should not feel disposed to disturb the opinion of court, because the affidavit was insufficient, and that for the following reasons.
The motion was made a day sooner than the Auditor had appointed in thenptice, when if it had been deferred till the true day specified by the Auditor, (which day he had a right to fix,) the affidavit shows the defence would have been then made, and was only excluded by anticipating the day.
The proceeding was without personal service of notice, and of course, subsequent applications to be heard, maY be entitled tQ greater léniency than to rehear judgments rendered on the service of prpcess or notice personally served.
The clerk having offered immediate trial, and the defence being of a nature Which xyas not calculated to surprize the opposite party, if his defence was lega} and meritoripus, we should not feel disposed f,o reverse to keep such a defence out, as the court below had the control of its own time, and could exercise a sound discretion in permitting a rehearing, which might he calculated to obtain substantial justice.
The propriety, therefore, of the rehearing must exclusively depend upon the admissibility of the defence offered, as disclosed in the affidavit, and afterwards proved on the trial,
Defendant, clerk of the county court, offers, the at treasury, in payment of the taxes due from hjm, warrants in favor of Barry and Hag-gin, which were refused by the treasurer, but allowed by the court.
Apt directing the warrants to be received by the treasurer.
Defence of tender or set off may not be mafj,e to the suits of the state against the collectors of the revenue.
That defence was the following. — The Saturday before the court commenced the clerk, attended at the Auditor’s office, and settled his accounts, and the Auditor certified the amount to the Treasurer.
The clerk then tendered to the Treasurer these Auditor’s;warrants, of five hundred dollars each, issued, two to William T. Barry, and one to James Haggin, payable to them or bearer. The Treasurer refused to receive these warrants in discharge of-the demand, alleging some illegality against them, whereupon the clerk refused to pay his account'a$ certified, declaring that he wou]d rely on j;hese warrants, and the tender thereof [o the Treasury, in defence tojany motion or suit, which might be brought against him, for the amount of revenue due from him. These were the discounts allowed by the court.
An act of Assembly, 1 Dig. L. K. 133, provides, that “all warrants which are or shall be issued by the Auditor upon the Treasurer, for any money whatever, shall be receivable in discharge of any 'taxes hereafter to be collected in this Commonwealth.” This act is relied on as settling the present question, and as imposing a duty upon the Treasurer to receive these warrants, and that as he failed to do so, the court was therefore right in allowing them.
It is true, that this section places the Auditor’s warrants, measurably on the same footing of moneys receivable at the Treasury, and the offer of them may be counted a species of tender, or at least, a claim of them as a discount; and if the court would have been justifiable in tolerating a plea of tender and refusal, or of a discount in favor pf one of the collectors pf the revenue against the state, then there will be an argument afforded in favor of the judgement. But it is not true that every defence which may be made by one individual against another, can be made by a collector of the revenue against the state, and various reasons may be given, why a contrary rule should prevail.
State is entitled to recover the amount of her d>¡mand against the collecting officer, notwithstanding his tender at the treasury, and in court of warrants on the treasury, made receivable for the taxes.
Practice in England and America in the settlement of treasury accounts-
The treasury of the state is local, and not transitory, ¡itnd therefore, it ought not to be compelled to meet, and litigate every defence with the officers of the revenue, or to accept tenders, whenever made in a court of justice. To secure the responsibility of collectors is often difficult, and they are, and must be, held to great strictness, and deprived of some of the privileges of other defendants. On the, contrary, the Treasuaer is bound by bond and oath of office, to accept a proper tender of treasury^ funds, and cannot be presumed to reject any from improper motives. If he should do so, it would be better to leave him to his responsibility to the party injured, for a breach of his official duty, or to leave the party to his remedy, to coerce the warrants by application to the judiciary, or to legislative redress, than to permit the courts, by verdicts or judgments to blend and settle accounts to, and against the state. The Treasurer is .also subject to a check, and the Auditor is appointed for that purpose, in order that the funds of the state may be kept secure. Hence, the Auditor must first determine what money is to be drawn, and then must know what is drawn or paid, and if this arrangement is broken in upon' by pleas of discount and tender, settled in our courts without consulting either officer, then the treasury might be insecure and its accounts confused; the revenue officers might, by such defences, delay pay-.' ments, and the legislative department of the government, could not at all times he informed of the accurate state of the treasury. For these reasons, the laws in force imperiously ‘ require all the accounts of collectors to be settled with the Auditor, and paid to the Treasurer, and not tendered to him, or equalled, by discounts.
Indeed, in the research we have been enabled, to make, we have been able to find no case where either the government of England, Virginia, Kentucky or the United States have permitted, of course, and as matter of right, a plea of tender or discount in behalf of a collector of revenue, when sued for money collected, and in his hands, and not accounted for, and the silence of the law on that subject is evidence that there is no such rule. It is true, cases are found in the courts *322 of tlie United States where public money has been placed in the hands of public agents, to be expended by them for the use of the government, and they have failed to produce to the treasury department, vouchers sufficient to show that they have discharged the trust by expending the whole of the moneyas directed; the courts have, subject to some limitation hereafter to be noticed, permitted vouchers to be produced lessening the demand, on actions against them for balances in their hands, provided those vouchers tended to show that the money was expended as intended. This is not proving discounts, ■but payments according to the duty of the agent; nor is it proving a tender; nor can it be believed, that an offer to pay it as directed, would excuse the delinquent from restoring it to the treasury. Moreover, all such accounts before they are allowed by a court, must first be tendered at the proper department, and claimed as an allowance, and if rejected, the court barely revises that decision. So that for the purpose of keeping accounts correctly, the accounting officer must in that case be consulted. And all this is not in the case of officers indebted for revenue collected, but in the case of public agents ■authorized to pay out and expend the money.
Nothing but a quietus from the auditor of public accounts, ¡is admissible in the defence of a motion of the state against a collector of the it,axes.
■In accordance with these principles of strictness in settling the accounts of collectors, it will be found that our statutes have proceeded; and that they must be held conclusive of this question.
The constitution itself speaks of a quietus, as necessary evidence in favor of collectors, when it declares that none should be eligible to the legislature, until they shall have obtained a quietus for the amount of their collection.
The act regulating the duties of' the Auditor, 1 Dig. L. K. 129, not only directs him to keep and settle the accounts of collectors, but declares that in legal proceedings against them for not settling, “though it should appear that the defendant oweth no balance to the public, yet his having failed to render an account to the Auditor, and to take from ■him his quietus, shall subject him to the payment of Jill costs,” of the proceeding. The same act directs *323 iliat lie shall keep a book for the purpose of entering the Treasurer’s receipts of all money paid into the Treasury by Sheriffs, &c. How he gets those receipts, and also what a quietus is, and how obtained, is explained by an act regulating the duties of the Treasurer, 2 Dig. L. K.. 1222. That act pro-, vides; “When any public debtor shall hereafter pay any sum or sums of money into- the public Treasury, the Treasurer on receiving the same, shall forth-, with make out a receipt for the amount, and carry the same to the Auditor, who is hereby authorized- and required, immediately to give to the Treasurer his receipt or quietus therefor; and the Treasurer-shall deliver the said receipt or quietus to-the person, who shall have paid him the sum or sums specified, therein.” From all this legislation about a quietus, an inference may be drawn, not that the legislature barely intended to furnish the public collector with, high evidence in his favor, which should be conclusive, if he had it, and might be supplied by other proof if he had it not; but that a quietus was.intended to be indispensable evidence in. favor of a, collector, without which he could not be excused. If this was not intended, why does not the act last recited permit the Treasurer’s receipt to.be delivered by him to the collector at once; and require it to be delivered to the Auditor, and his quietus obtained ? Does not this intimate that the Treasurer’s receipt acknowledging that he had actually received the. money, instead of a tender or offer to pay him, would answer no beneficial purpose, and would not. be evidence to acquit the collector, until a quietus. was obtained? That this is the case will be found not to be left to inference only, but it is expressed, by further legislation on the subject.
ft seems that proof of the payment of the revenue into the treasury by any other evidence than. tbe quietus of the auditor, would be no defence to a motion of the state, for failing to pay the money.
*323 An act of 1805, 2 Dig. L. K. 1086, provides that;
“If any Sheriff, or collector of the revenue, shall not, on or before the said fifteenth day of October annually, obtain from the Auditor of public accounts, a quietus in full, for all monies then due from him, it shall be the duty of the Auditor of public accounts, t.o move, in the General Court, on the *324 third or any subsequent day of their next term, for judgment against such Sheriff or collector and his security or securities for the amount due from him;” “and the said court shall prbcefed arid enter judg- ■ ment for what may appear unpaid against such Sheriff and collector and his securities as heretofore directed by law.” The same act, lest it might be doubtful whether clerics, who are also collectors, were included in this provision, proceeds to declare that they shall be liable to the same kind of motion, and subject to the laws respecting Sheriffs. This act speaks expressly what was before intimated, and unequivocally makes the collector liable for not obtaining a quietus-, which places' it beyond doubt, that the quietus is indispensable evidence, and nothing less will prove payment. If then, even an actual payment, proved by any other evidence, would not excuse the delinquent, certainly a discount, or a bare tender and refusal without payment, is inadmissible. The collector here cannot have his discount, but must be left to his remedy against the Treasurer, by proceedings against him, or to his application to the legislature for redress.
Inconvenience which would follow the permission of the collector to rely,in his defence of the motion of tho state.on other evidence beside tho audi- ' tor’s quietus.
We acknowledge that this construction of the acts does curtail the privilege of defence to be made by a collector, and places him on a footing different from that of other defendants in our courts, and we have no doubt, that it is necessary to do so, for the security of the revenue, and that without it, not only great confusion would be produced in the finances of the State, but many frauds would be practised on the Treasury. If this defence of tender and refusal, or discount, or whatever it may be called, is allowed, what will soon be the consequence? The collectors need never settle their accounts with the proper department; for if they do, it will only acquit them of costs. They can acquire claims, which frequently float through the country as articles of speculation, and when prosecuted for defalcation, produce them as a discount on the trial, and discharge themselves, and the State will soon have to meetj in her courts, long lists of claims of witnesses, guards, venire men, constables, idiots, wolf scalpg *325 &c. v/liich abound, and operate as so many little streamlets, conveying the money from the Treasury; and to settle them, the court would either have to impannel a jury, who might allow some and reject others, in their retirement, without a possibility of knowing what was allowed or rejected; or the court itself would have to act the part of an auditor in chancery, and make an account current, and note on record what was allowed and what was rejected. To prevent this, the State has selected its own Auditor, and required every claim to pass through his hands, before any can be allowed, or any debtor be released.
Acts of Congress regulating the controversies between that government and its debtors in revenue oases.
Quietus of the auditor, and that only, is evidence of payments at the treasury.
This rigor with regard to officers of the revenue, is not new in the science of government. In England, statutes are found enabling defendants pursued for defalcations of revenue, to avail themselves of certain species .of defence, which was allowed, of course, to every other defendant. The United States has subjected every delinquent to the danger of being concluded by the bare productions of transcripts from the books of the Treasury. These transcripts, made out by the agents of the United States, when plaintiff, is evidence against the defendant, and it is expressly declared that no claim shall be allowed as a credit, unless it has been first tendered to the proper department and rejected. This State has also made a copy of an account from the books of the Auditor, evidence against delinquent collectors, and even accounts in favor of the Penitentiary, certified by the agent, are made prima facie evidence against defendants, when sued for claims due to that institution. It would shock the feelings of defendants to apply such rules to other controversies. They might cry out for justice, when bare open accounts, made out by their adversaries, were to he taken as true, until they should prove the negative, that they were not correct. Yet these rules have become necessary and have long been used without serious injustice.
It is but a continuation of the same principle giving advantage to the government in producing her evidence, that causes her to restrict the evidence of the defendant, and tie him down to a certain *326 species, and that only to prove a particular kind of defence; that is payment, by a quietus, and not tender or discount. It is by operating on the rules of evidence, that this necessary strictness is introduced, and it all resolves itself into what is, or what is not the proper evidence to be used. The acts cited make a quietus necessary, and this answers every difficulty in construing them, when they speak of the defendants making defence and shewing nothing to be due. The question arises, by what kind of evidence is he to do this? The answer is, by the quietus which the law has required. Our legislature has tied them up to this, and has made none of the exceptions, which the laws of the United States have done, in permitting her courts to allow claims which have once been tendered and rejected at the proper department, which permission, from experience, is a provision of doubtful policy, and has. often excited suspicions of fraud on the Treasury. Instead of this, the legislature of this State has still reserved in its own hands, the right of allowing claims which have been rejected. Hence arises the numerous private statutes, allowing credits to collectors. Sometimes their delinquent lists have come too late or are informally certified; sometimes their books, by which they collect, differ by mistakes of the pen from those held by the Auditor, and numerous other cases exist, and in some of them, the collector has paid the money into the Treasury to avoid a judgment; in all such cases the legislature has interposed by numerous acts and afforded redress, have directed credits, or permitted the money wrongfully paid to be withdrawn, and in no instance, it is believed, since the commencement of the government, have their collectors applied to the courts to give those credits; and this want of an attempt heretofore in the courts, and the numerous private acts upon the subject, go far to prove the cotemporaneous exposition of the statutes, to be as We have expounded them, and that the courts are tied up to a quietus as the only defence.
Legislature had power to prescribe ?vhat.sjloui<1 sujts a„ colTecVovs on all contracts to ment> ° '
*326 We feel no disposition to question the power of the legislature to tie down such controversies to such narrow limits, because we see nothing to pro- *327 vent that department of the government from doing so, by proper rules prescribed, before the contracts of collectors are made, as it can do, even in the case of individual contracts, and as is done in the case of the act to prevent frauds and perjuries, which prohibits a plaintiff to provea sale of land by panol contract made after the statute is passed.
Remedies atreasurerfor refusing to receive war-payment and ceipt.11S 16
Mandate,
Dissent;,
We would not be understood as allowing any infereuce to be drawn, that we disapprove the conduct of the Treasurer in rejecting these warrants, or as intimating that it was his duty to have taken them. He is not before us, nor are his reasons for acting as he did presented, and he may be brought before the judiciary by mandamus, to compel him to receive them, or by some action for the injury he has occasioned by the rejection of them, if he acted wrongfully, and when this occurs it will be time enough to pronounce an opinion upon his conduct.
We have treated the matter, on the previous question of the nature of the defence attempted, which we think inadmissible, and if these warrants had been notes apparently, on their face, issued by the Bank of the Commonwealth, which the Treasurer had rejected from suspicions that they were, counterfeit, we should be bound to come to the same conclusion.
A majority of the court, therefore, have concluded that the defence attempted was inadmissible, and that the court erred in setting aside the judgment and perm? ding it to be made.
The judgment must be reversed with costs and the cause be remanded, that judgment may be entered as at first given in the court below.